## Burns v. Burns.

*Divorce—Evidence—Leading questions by master.*

Where rules of court require a master in divorce to insist upon the observance of the rules of evidence in taking testimony, he may not himself conduct the examination of witnesses by asking leading questions to which only an affirmative answer is necessary.

Libel in divorce. C. P. Washington Co., Feb. T., 1924, No. 94.

*Harry F. Moore,* for libellant.

BROWNSON, P. J.—Court Rule No. 14 requires, in section 21 thereof, that a master in divorce shall, at the hearing before him, "insist . . . upon the observance of the rules of evidence in the examination of witnesses." In reading the testimony reported by masters, we have too often found them permitting counsel to put leading questions to witnesses, and at times, as in the present case, even themselves transgressing the rule on this subject. In this case the master, pursuant to the direction of the court rule that "he shall, in the first instance and before examination by counsel, personally question all witnesses regarding the matters alleged in the libel and answer," proceeded to interrogate witnesses as to what they knew about the case. When he had finished doing so, counsel for the libellant put no additional questions, and, there being no appearance by or for the respondent at the hearing, there was no cross-examination. The result is that the case comes before us entirely on testimony elicited by the master's questions, and a very large part of the libellant's testimony in support of the charges which this libel makes against the respondent consists of mere assent by the witness to statements or suggestions contained in leading questions propounded by the master. The following extracts will illustrate what is here referred to:

Q. What else did he do—tell you to go to hell? A. Yes, a lot of times. Q. Did he ever strike you? A. Yes, sir. Q. Did he hit you? A. Yes, in the face once—many times, and choked me. Q. Did he kick you down? A. Yes. Q. Ever black your eyes? A. He certainly did. Q. Did he ever make any black-and-blue marks on you? A. Yes, on my arm and shoulders. . . . Q. Did he ever threaten to kill you? A. Yes, he said he would kill me if I was not his wife and wasn't so small. . . . Q. In your libel you mention Dec. 25, 1922, as a date on which your husband gave you a beating. Did he curse you at that time? A. Yes, and he choked and swore at me. Q. Did he strike you with his fist? A. Yes, sir. Q. Did you think that your life was in danger at any time? A. Yes. . . . Q. Did he ever accuse you of going out with other men. A. Yes, sir. Q. Was he of a jealous disposition? A. Yes, sir. . . . Q. You allege in your libel that in March, 1923, he assaulted you, blacked your eyes and face—you mean by that that he struck you with his fist? A. Yes. Q. Knocked you down at that time? A. Yes, sir. Q. Did he continue this treatment during the entire period of your married life? A. Yes, he was not steady, but maybe two or three months or maybe for two weeks at a time.

And so on. In fact, if her affirmative replies to leading questions were to be stricken out, her testimony as to the respondent's treatment of her would be reduced to rather small dimensions.

We are not to be understood as saying that all leading questions by a master are improper. One of the duties which, under the court rule, rests upon him is that, when it becomes necessary to test statements made by a witness, or to inquire into material matters that have been withheld or imperfectly brought out, he shall cross-examine the witness; and leading questions are

usually necessary in cross-examination. But questions that are not in the nature of cross-examination and do not relate to merely formal matters, but whose purpose is to ascertain what facts a libellant (or any other witness) knows that would support the grounds of complaint set up in the libel ought not to be leading in character, but should be framed so as to cause the particular facts to come from and be narrated in the words of the witness. If these facts are given merely by means of affirmative replies to leading questions, the courts do not regard the testimony as entitled to the same weight as testimony elicited by proper questions: Strohmeyer *v.* Strohmeyer, 67 Pitts. L. J. 24, and see Petro *v.* Petro, 67 Pitts. L. J. 62. In the case first cited the libel was dismissed, partly upon the ground that testimony given in the form mentioned was not satisfactory and sufficient proof. In the present instance this would be too drastic, because here it was not libellant's counsel that transgressed the rule of evidence, but the master, and the testimony was not all confined to such affirmative replies. But the course that was pursued was erroneous, and we think we should take some action which will tend to cause a better observance and enforcement by masters of the rules which regulate the production of testimony.

And now, Aug. 18, 1924, the case is referred back to the master, with instructions to retake the testimony of the libellant, Effie Burns, and, in so doing, to comply with and require observance of the rules of evidence.

From E. E. Crumrine, Washington, Pa.